# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Gwinnett County, Georgia, et al.,

                    Plaintiffs,

                              Case No. 1:21-cv-21-MLB

v.

Netflix, Inc., et al.,

                    Defendants.

_____/

## OPINION & ORDER

This case is before the Court on Defendants' Motion to Stay (Dkt. 42) and Plaintiffs' Motion to Remand (Dkt. 11).

## I.   Background

Georgia's Consumer Choice for Television Act (the "Television Act") requires "video service provider[s]" either to acquire a state franchise from the Secretary of State for service areas in which they provide "video service" or to negotiate directly with a municipal or county franchise authority.  O.C.G.A. § 36-76-3.  Holders of franchises must pay franchise fees to local governing authorities in the holder's service area, provided the governing authorities have given proper notice.  O.C.G.A. § 36-76-6.

The Television Act defines "video service" as "the provision of video programming through wireline facilities located at least in part in the public rights of way without regard to delivery technology, including Internet protocol technology." O.C.G.A. § 36-76-2(16). This definition does not include "any video programming provided by a provider of commercial mobile service as defined in 47 U.S.C. Section 332(d) or video programming provided as part of and via a service that enables users to access content, information, e-mail, or other services offered over the public Internet." *Id.*

On November 23, 2020, Plaintiffs filed a petition for declaratory judgment and other relief against Defendants in Gwinnett County Superior Court alleging Defendants are video service providers under the Television Act but have failed to comply with its requirements. (Dkt. 1, Ex. A.) Defendant DIRECTV, LLC removed the case asserting diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) Plaintiffs moved to remand under the comity abstention doctrine. (Dkt. 11.) In response, Defendants argue that the Supreme Court and Eleventh Circuit have barred non-statutory remands

of properly removed actions, and that, even if comity could apply, comity

abstention under CAFA would be improper.  (Dkt. 39 at 6, 9.)

This is not the first case in which municipalities have sued

Defendants for failure to pay these types of fees.  In 2018, the City of

Creve Coeur, Missouri filed cases against the same Defendants (except

Disney DTC) in Missouri state court based on Defendants' failure to pay

fees under Missouri's version of the Television Act.  *City of Creve Coeur*

*v. DIRECTV, LLC*, No. 4:18cv1453, 2019 WL 3604631 (E.D. Mo. Aug. 6,

2019).  Defendants removed both cases to federal court.  The federal court

remanded under comity abstention, and Eighth Circuit denied

immediate review.  *City of Creve Coeur v. DirecTV, LLC*, No. 19-8016,

2019 WL 7945996, at *1 (8th Cir. Sept. 12, 2019).

In August 2020, four cities in Indiana filed a case against the same

five Defendants in Indiana state court based on Defendants' failure to

pay franchise fees to Indiana municipalities under Indiana's version of

the Television Act.  Again, Defendants removed to federal court, and the

district court remanded based on the doctrine of comity abstention.  *City*

*of Fishers v. Netflix, Inc.*, 501 F. Supp. 3d 653, 2020 WL 6778426 (S.D.

Ind. Nov. 18, 2020).  The Seventh Circuit affirmed.  *City of Fishers v. DIRECTV*, --- F.4th ----, 2021 WL 3073368 (7th Cir. July 21, 2021).[1]

## II.   Legal Standard

An action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a).  Diversity jurisdiction under 28 U.S.C. § 1332(a) requires that no defendant have the same citizenship as plaintiff and that the amount in controversy exceed $75,000 (excluding interest and costs).  CAFA, which Congress enacted "to facilitate the adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), allows a defendant to remove a class action to federal district court so long as the case satisfies the statute's special diversity and procedural requirements, all of which the parties agree are satisfied in this case.[2]   CAFA, however, has exceptions to federal

---

[1] On March 10, 2021, Defendants moved to stay Plaintiffs' remand motion pending the Seventh Circuit's resolution of *City of Fishers*.  (Dkt. 42.) Because the Seventh Circuit has now resolved that appeal, Defendants' motion is denied as moot.

[2] CAFA requires only minimal diversity of citizenship among parties, meaning at least one plaintiff and one defendant must be from different states.  28 U.S.C. § 1332(d)(2).  To be removable under CAFA, an action must also satisfy the statute's definition of a "class action" or a "mass

jurisdiction for cases that are truly local in nature. 28 U.S.C. § 1332(d)(4).[3]  But again, the parties do not claim any of those statutory provisions apply.

Plaintiffs' concession that Defendants properly removed this case to federal court provides a strong basis for this Court to deny remand. After all, the Court (like all federal courts) has a "virtually unflagging obligation" to exercise the jurisdiction given it by the Constitution and laws of the United States. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . .  The right of a party plaintiff to choose a

---

action."  *See* 28 U.S.C. § 1332(d)(1)(B); 28 U.S.C. § 1332(d)(11)(B). Finally, the amount in controversy must exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

[3] CAFA's local controversy and home state exceptions, for example, require a federal court to decline jurisdiction when more than two-thirds of the putative class and at least one defendant from whom significant relief is sought are citizens of the state in which the action was originally filed, provided the principal injury was also incurred in that state and no similar class action had been filed in the three previous years. 28 U.S.C. § 1332(d)(4)(B).  It also precludes the exercise of jurisdiction when at least two-thirds of the class members and the primary defendants are citizens of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4)(B).

Federal court where there is a choice cannot be properly denied." *Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 40 (1909). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River*, 424 U.S. at 813.

Congress passed the Tax Injunction Act of 1937 (the "TIA") to limit the district court's authority over certain tax-related matters.  It provides that "the district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  The TIA, "by its terms," "bars anticipatory relief, suits to stop ('enjoin, suspend or restrain') the collection of taxes." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 433 (1999).  No party argues the TIA applies here.

Instead, Plaintiffs ask the Court to remand this matter under the doctrine of comity abstention.  That doctrine encourages federal courts to avoid "interfer[ing] . . . with the fiscal operations of the state governments . . . in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 422 (2010) (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)).  That doctrine is alive and strong

6

today.  In *Levin v. Commerce Energy, Inc.*, for example, a natural gas marketer sued the state tax commissioner of Ohio, claiming discriminatory tax treatment under the Commerce Clause and the Equal Protection Clause in relation to a tax imposed on natural gas marketers but not local distribution companies.  *Id.* at 418, 419.  The district court dismissed the lawsuit, citing comity abstention, but the Sixth Circuit reversed, finding the district court's application of comity was too expansive.  *Id.* at 419–20.  The Supreme Court then reversed the appellate court, holding the comity doctrine was not so limited and required the claims to proceed in state court.  *Id.* at 432–33.  In doing so, the Court sought to "ensure that 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'" *Id.* at 431 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

In both *City of Creve Coeur* and *City of Fishers*, the federal courts cited *Levin* to conclude that the comity doctrine warranted remand to state court of class actions brought by cities to collect franchise fees from video-service providers under the respective state's regulatory schemes.

*City of Creve Coeur*, 2019 WL 3604631, at \*4-5; *City of Fishers*, 2020 WL 6778426 at \*6.  The *City of Creve Coeur* court, for example, noted first that "both Satellite Defendants and Streaming Defendants, by removing these cases, have invited federal-court review of commercial matters of which Missouri and Missouri municipalities enjoy wide regulatory latitude." 2019 WL 3604631 at \*5 (internal citation, quotation marks, and alternations omitted).  Second, the court found "the state court will be a better forum for certain defenses related to the application of Missouri law and the Missouri Constitution because without question the state court is more familiar with Missouri's tax laws and the intent of the Missouri legislation."  *Id.* (internal quotation marks and alterations omitted).  Finally, the court found Missouri courts were in the best position "to rule on any potential constitutional violation because they are more familiar with the state legislative preferences and because the TIA does not constrain their remedial options."  *Id.* (internal quotation marks omitted).  The Seventh Circuit (and district court) in *City of Fishers* reached similar conclusions in regard to Indiana's Video Service Franchises Act.  2021 WL 3073368, at \*5–6; 2020 WL 6778426, at \*6.

8

## III.   Discussion

### A.   District Courts Have Authority to Remand on a Non-Statutory Basis Under the Comity Doctrine.

The Supreme Court's comity doctrine requires a "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 108 (1981). Accordingly, courts should "in all cases" refrain from interfering "with the fiscal operations of the state governments." *Levin*, 560 U.S. at 422.

Despite the Supreme Court's emphasis on comity, Defendants argue this Court has no authority to remand on a non-statutory basis. In making this argument, Defendants rely primarily on *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). Defendants recognize the Supreme Court abrogated *Thermtron* on other grounds in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). (Dkt. 39 at 7.) But Defendants also mischaracterize the effect of the Supreme Court's decision in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988), on the application to *Thremtron* to cases such as this. Specifically, Defendants argue *Carnegie-Mellon* "reiterate[s]" that where "a district court has diversity jurisdiction over the claims it 'has no authority to

9

decline to hear the removed case.'" (Dkt. 39 at 17.)  Not correct.  In *Carnegie-Mellon*, the Court settled a split among circuits as to whether a district court has the authority to remand in the absence of statutory authority, clarifying that "[t]he statement in [*Thermtron*] that a case may not be remanded on a ground not specified in the removal statute applies *only to situations* in which the district court has no authority to decline to hear the removed case," and not where "the district court has undoubted discretion to decline to exercise jurisdiction." *Id.* at 344 (emphasis added).  And courts, including the Eleventh Circuit, have since recognized that *Carnegie-Mellon* clarified district courts' "power to remand a removed case in the absence of specific statutory authority." *Snapper v. Redan*, 171 F.3d 1249, 1263 n.26 (11th Cir. 1999); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1217 n.15 (3d Cir. 1991) (holding that *Carnegie–Mellon* "clearly overruled *Thermtron* to the extent that *Thermtron* held that only statutory grounds for remand are authorized").

*Thermtron* was a strange case, involving a district court that remanded an otherwise perfectly removable case simply to reduce its workload.  So while courts still rely on *Thermtron,* they do so only in the limited circumstances in which the court has no authority to eliminate

"the case from its docket, whether by remand or dismissal." *Carnegie-Mellon*, 484 U.S. at 356. Indeed, the Supreme Court in *Carnegie-Mellon* recognized that while *Thermtron* was a "clearly impermissible remand" based on an "overcrowded docket," "an entirely different situation is presented when the district court has clear power to decline to exercise jurisdiction," which "best serves the principles of economy, convenience, fairness, and *comity* which underlie the pendent jurisdiction doctrine." *Id.* at 356–57. The limited application of the *Thermtron* proposition is inapplicable here.[4]

---

[4] The cases cited by Defendants involved "clearly impermissible remands" like the one in *Thermtron* and, notably, do not implicate any comity considerations. *See Lloyd v. Benton*, 686 F.3d 1225, 1228 (11th Cir. 2012) (seeking remand with no common law or statutory basis); *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1275 (S.D. Fla. 2020) (seeking remand based on argument that Florida has an interest in resolving insurance disputes); *Davis v. Deutsche Bank Nat'l Tr. Co.*, No. 1:14-CV-3847-ELR-LTW, 2015 WL 12839491, at *3 (N.D. Ga. May 14, 2015) (seeking remand because "it would be more convenient"); *Young v. Smith*, No. CV 214-109, 2015 WL 1541686, at *6 (S.D. Ga. Mar. 31, 2015) (seeking remand because "it was the Plaintiff's preference"); *Biscayne Park, LLC v. Madison Realty Capital, L.P.*, No. 13-20336-CIV, 2013 WL 2243975, at *3 (S.D. Fla. May 21, 2013) (seeking remand because the "case feels like the extension of a previous proceeding"); *Lamar v. Home Depot*, 907 F. Supp. 2d 1311, 1315 (S.D. Ala. 2012) (seeking remand with no statutory basis).

Admittedly, *Carnegie-Mellon* involved the viability of remand in context of pendent state law claims—which is not the procedural situation here.  But, the key point in *Carnegie-Mellon* is that *Thermtron* only applies where the district court has "no authority" to decline to hear the removed case.  *Id.*  And where there is power to decline jurisdiction and dismiss, there is power to remand.  *See id.* at 343 ("A wide discretion to remand rather than to dismiss will enable district courts to deal with appropriate cases involving pendent claims in the manner that best serves the principles of judicial economy, procedural convenience, fairness to litigants, and comity to the States . . . .").  As the Supreme Court's 150 years of comity cases demonstrate, a court clearly has the authority to decline to hear disputes that implicate local revenue collecting.  With that authority to decline a case in favor of state resolution, comes the Court's authority to remand the case to the state court from whence it came.

Indeed, the Third Circuit explicitly held that the reasoning in *Carnegie-Mellon* applies to abstention-based remands under the comity doctrine because "there is no question of the district court improperly refusing to hear a case properly before it, as occurred in *Thermtron*."

12

*Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 217 (3d Cir. 1995) (holding that "remand is available under *McNary*" because "unlike *Thermtron,* it is clear that the district court not only had the authority to decline to hear the case, but was in fact required to relinquish jurisdiction under *McNary*"). There is no question that district courts have the authority to remand on a non-statutory basis under the comity doctrine.

A different conclusion is not warranted by virtue of Defendants' invocation of CAFA jurisdiction. Defendants argue that Congress, in passing CAFA, silently eliminated the comity doctrine in class cases. Similar arguments equating silence with statutory intent have been explicitly rejected by the Supreme Court. *See Carnegie-Mellon,* 484 U.S. at 343–344 ("Given that the statute's silence does not negate the courts' undoubted power to dismiss such cases, that silence cannot be read to negate the power to remand them."). The Seventh Circuit has also recognized that CAFA is "such a jurisdictional statute" that must be read with "sensitivity to 'federal-state relations.'" *Sask. Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017) (quoting *Levin*, 560 U.S. at 423). And while CAFA's jurisdictional requirements had not been met in that case, *Levin* comity "support[ed]" remand of the class action

because it "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Id.* (quoting *Levin*, 560 U.S. at 421). In the absence of any authority from the Eleventh Circuit, this Court agrees with the Seventh Circuit's determination.

Defendants argue that CAFA's "home state" and "local controversy" exceptions indicate that Congress had already balanced federal and state interests and eliminated any additional comity considerations, noting that courts have characterized the exceptions as a type of "abstention doctrine." (Dkt. 39 at 8.) But the exceptions in the statute relate to when courts shall decline to exercise jurisdiction as it relates to the citizenship of the parties. 28 U.S.C. § 1332(d)(4). It is silent as to jurisdiction regarding disputes involving the fiscal matters of local governments as well as the comity doctrine generally. And the cases cited by Defendants, indicating that CAFA's exceptions operate as an abstention doctrine, do not involve any comity considerations.[5] Absent clear language in the statute expressing an intention to eliminate the comity doctrine or any authority from the Eleventh Circuit holding that the comity doctrine does

---

[5] (Dkt. 39 at 8–9.)

14

not apply in CAFA cases, the Court does not find Defendants' invocation of CAFA jurisdiction to impact this Court's authority to remand, provided the *Levin* factors warrant application of the comity doctrine. *See City of Fishers*, 2021 WL 3073368, at * 7 ("The fact that Congress considered federal-state comity in the CAFA exceptions does not mean that it swept decades of abstention doctrines off the table.").

## B.   The *Levin* Factors Support Remand.

In *Levin*, the Court cited a "confluence of factors," in reaching its decision that comity warranted abstention under the facts before it.

> First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position. Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options. Individually, these considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process.

*Id.* at 431–32.

The Court reaches the same conclusion here.  Defendants seek federal court intervention in matters over which the State of Georgia and

its municipalities have traditionally "enjoy[ed] wide regulatory latitude"—specifically, utility regulation and gross revenue fees. *Levin*, 560 U.S. at 431. And this matter is a dispute over commercial regulation and does not involve a party's fundamental rights or a suspect classification requiring heightened judicial scrutiny. *See id.* Second, Defendants invoke the Court's jurisdiction "to improve their competitive position," *id.*, namely over traditional cable television and landline telephone providers that pay franchise fees under the Act. (*See* Dkt. 39 at 4–5 (contending that the General Assembly's recent consideration of a proposed digital services tax indicates that it does not view streaming services as within existing taxes or fees subject to Georgia taxes, and thus Defendants are not "video service providers" subject to the Television Act).) Finally, this matter involves an interpretation of Georgia state law—specifically, certain provisions of the Television Act—for which there is no existing state court guidance. Additionally, although Defendants have yet to file a responsive pleading raising defenses to Plaintiffs' claims, Georgia state courts are better positioned than this Court to correct any potential constitutional or other violation Defendants may raise because "they are more familiar with state

legislative preference" concerning the Television Act and because the TIA constrains remedial options available to the Court. *See Levin*, 560 U.S. at 432. Therefore, the Court finds that these considerations, "in combination," demand remand in "deference to the state adjudicative process." *See id.*

### C. Defendants' Remaining Arguments Contravene *Levin* Comity and Do Not Weigh Against Remand.

Defendants note that Title 36 of the Georgia Code governs video service franchises and the franchise fees sought by the local governments in this case. *See* O.C.G.A. § 36-76-1, et seq. The statute addresses the process for granting video service franchises, calculating franchise fees, and resolving post-audit disputes between holders and municipalities regarding franchise fees. *Id.* § 36-76-3, 4, & 6. Defendants argue that comity abstention only applies to taxpayer claims challenging a state taxing scheme and that, because the local governments' enforcement action are seeking franchise fees that are not part of Georgia's state tax statutes, there is no "pending state proceeding" and comity cannot apply. (Dkt. 39 at 10–11.) But Defendants cite no authority indicating that any

comity case has ever required a "pending state proceeding" requirement.[6]
And "nowhere in the *Levin* 'confluence of factors' did the Supreme Court
condition comity abstention on the presence of pending state
proceedings." *City of Fishers*, 2021 WL 3073368, at * 7.  That there is no
"pending state proceeding" here does not change the Court's application
of the *Levin* factors to this case.

Defendants further argue that actions for damages cannot be
remanded based on abstention, relying on *Quackenbush v. Allstate Ins.
Co.,* for the proposition that "'federal courts have the power to dismiss or
remand cases based on abstention principles only where the relief being
sought is equitable or otherwise discretionary,' not in a 'damages action.'"
517 U.S. at 731.  But the Court in *Quackenbush* was discussing *Younger*
and *Burford* abstention when making this point, not *Levin/McNary*

---

[6] Defendants appear to borrow the "pending state proceeding" language
from cases dealing with *Younger* and *Colorado River* abstention, which
by their nature involve parallel state proceedings. But Plaintiffs here
invoked comity—a doctrine not born from parallel proceedings but
instead originating from the desire to avoid interfering with the fiscal
operations of local governments.  *McNary*, 454 U.S. at 108.  And the
Supreme Court issued *Levin* and *McNary* after *Younger* and *Colorado
River* without importing a "pending state proceedings" requirement into
comity.

comity. *Id.* at 719. And *Quackenbush* specifically distinguished *McNary* in regard to this principle. *Id. See McNary,* 454 U.S. at 115 (holding principle of comity barred state taxpayers' suit for damages brought in federal court under Civil Rights Act to address allegedly unconstitutional administration of state tax system); *see also City of Fishers*, 2021 WL 3073368, at * 7 ("The Supreme Court has permitted abstention in at least one case involving a request for declaratory relief tied to a damages action." (citing *McNary*)). The *Quackenbush* Court also acknowledged the Court had "approved the application of abstention principles in declaratory judgment actions." 517 U.S. at 719 (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297 (1943). In *Huffman*, the Court held that comity applies to declaratory judgment actions, even though "further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." 319 U.S. at 300. The *Huffman* decision demonstrates "not only the post-[Tax Injunction] Act vitality of the comity principle, but also its applicability to actions seeking a remedy other than injunctive relief." *McNary*, 454 U.S. at 100 (citing *Huffman*, 319 U.S., at 299). "[T]he comity doctrine extends to claims seeking damages," because the doctrine "establishes an even '[m]ore embracive'

prudential rule that federal courts should refrain from hearing 'claims for relief that risk disrupting state tax administration.'" *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124 (9th Cir. 2016) (reversing district court's judgment and remanding case to state court because the "comity doctrine bar[red] the district court from awarding statutory damages on the state-tax component of the plaintiffs' claims").

Finally, Defendants argue that *Levin* and the comity doctrine apply only to federally filed taxpayer claims challenging the state taxing programs, and not to enforcement actions initiated by taxing authorities. (Dkt. 39 at 14.)   But "*Levin* did not hold that comity principles are inapplicable to enforcement actions."  *City of Fishers*, 2020 WL 6778426 at *5 (citing *Levin*, 560 U.S. at 432 (noting that under this prudential doctrine, the taxing authorities can select their forum)).  On the contrary, "[r]egardless of who brought the underlying suit, the district court's resolution of the merits issues [here] will risk or result in federal court interference with the fiscal affairs of local government—the principal concern of *Levin*."  *City of Fishers*, 2021 WL 3073368, at * 4.  The Court's involvement will almost certainly impact Plaintiffs' ability to raise revenue, either by permitting or excluding the fees at issue.

20

Defendants' efforts to distinguish Plaintiffs' cited cases on their individual facts is unavailing.  The fact that *Homewood Village, LLC v. Unified Government of Athens-Clarke County*, for example, involved dismissal of "a direct challenge by property owners to enforcement of certain government charges, not a removed action where governments sought to collect fees," does not impact this Court's analysis under *Levin*. (Dkt. 39 at 16 (citing *Homewood Village*, 3:15-CV-23, 2016 WL 1306554, at *1 (M.D. Ga. Apr. 1, 2016).)  The key point of *Homewood Village* is that "[a]lthough comity concerns frequently arise in challenges to local taxes, they can also apply to challenges to local fees."  2016 WL 1306554, at *1 (dismissing case about stormwater fees assessed by local ordinance based on the comity doctrine notwithstanding the fact that the fee was not a "tax" under the Tax Injunction Act); *see also City of Fishers*, 2021 WL 3073368, at * 4 ("the franchise fee imposed under the Act, much like a tax, yields revenue for municipalities in Indiana" and thus "can be understood as a tax for *Levin* purposes").  And, as discussed above, a court that has the power to dismiss under the comity doctrine also has the power to remand.  *See Carnegie-Mellon*, 484 U.S. at 343; *McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199, 1203 (5th Cir. 1991) (noting

that *Carnegie–Mellon* "established that remand is appropriate when a district court has discretion to dismiss a case").

The Court is not unsympathetic to Defendants' position here.  The comity doctrine may have been around (in one form or another) for more than a century.  But it is "seldom invoked," most authorities "devote little attention" to it, and the Supreme Court is often "unclear about just how expansive the doctrine is, and in precisely what kinds of tax cases it is most pressing."  *City of Fishers*, 2021 WL 3073368, at * 3; *Normand v. Cox Commc'ns, LLC*, 848 F. Supp. 2d 619, 623 (E.D. La. 2012).  There are also factual differences between this case and the paradigmatic comity cases such as *Levin*: this case was brought by municipalities rather than taxpayers (or even states); it involves franchise fees rather than ordinary taxes; it seeks to collect money that the state and its municipalities have not historically collected or relied on; it does not (currently) involve constitutional claims requiring complex, discretionary remedies; and it implicates a federal jurisdictional statute (CAFA) that itself reflects some sort of balance between federal and local interests.  Perhaps these differences take our case outside the core comity cases and into a greyer area.  But, on balance and in the absence of contrary authority from the

Eleventh Circuit, the Court concludes we are still in comity-doctrine territory here.  So Plaintiffs' motion to remand is granted.

## IV.   Conclusion

For the reasons discussed above, Defendants' Motion to Stay (Dkt. 42) is **DENIED AS MOOT** and Plaintiffs' Motion to Remand (Dkt. 11) is **GRANTED**.   The case is **REMANDED** to the Superior Court of Gwinnett County, Georgia.

**SO ORDERED** this 5th day of August, 2021.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE